IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-150-BO

| | |
|---|---|
| SCOTT LANDRESS, ) | |
|     Appellant, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| RICHARD D. SPARKMAN, ) | |
|     Appellee. ) | |

This matter is before the Court on an appeal of the bankruptcy court's grant of summary judgment in favor of Appellee. For the reasons discussed below, the order of the bankruptcy court is REVERSED.

## BACKGROUND

James Alexander Mason, Jr., the debtor in this case, was one of three managing partners of MMJ Partners, LLP ("MMJ"). MMJ is Delaware limited liability partnership with its principal place of business in Durham, North Carolina. MMJ's partnership agreement states that it "shall be construed and interpreted in accordance with the laws of the State of Delaware." Third Amended and Restated Partnership Agreement of MMJ Partners, LLP [hereinafter Partnership Agreement] at 45, DE 7-2 at 62.

Mason also owned an interest in Tier One Solar, LLC. In late 2013, Tier One Solar needed about $1 million in working capital for one of its projects, and Mason turned to Scott Landress for a loan. On December 23, 2013, within weeks of Mason's initial solicitation, Landress made a secured loan to Tier One Solar through Mutsy I, an LLC wholly owned and operated by Landress. The loan had a principal amount of $850,000 plus a premium of $212,500 and was memorialized by a promissory note and a security agreement granting Mutsy a security

interest in substantially all of the personal property of Tier One Solar. As additional security for Landress, Mason executed a personal guaranty and a second security agreement ("Security Agreement"). Through this Security Agreement, Mason pledged and granted Mutsy a security interest in his MMJ partnership interest and the distributions from the partnership. Landress was never provided a copy of the MMJ Partnership Agreement prior to executing the security agreement. On the same day the loan was made, Landress transferred the note, both security agreements, and Mason's personal guaranty from Mutsy I to himself.[1] DE 7-1 at 102.

The Security Agreement pledges Mason's interests in MMJ as security for the loan. Specifically, it grants a security interest in the following: "(a) all right, title and interest of [Mason] in, to and under the MMJ Partnership agreement and the partnership owned by [Mason] in MMJ, (b) all dividends and distributions payable in respect of such partnership interest and (c) all proceeds of the foregoing." Security Agreement at 2, DE 7-2 at 97. The agreement states that it "shall be governed by and construed in accordance with the laws of the State of New York . . . ." *Id.* at 7. The agreement further states that no consent or approval is needed in connection to the execution and delivery of the agreement, that Mason owns the collateral, and that execution of the agreement does not violate any contract to which Mason is bound. *Id.* at 2–3.

Landress, a California resident, was in Florida when the Security Agreement was executed in New York by his attorney. Mason, a North Carolina resident, signed the Security Agreement in New York.

The problem giving rise to this appeal is that the MMJ Partnership Agreement purports to prohibit the partners from using their MMJ interests as security for loans without the consent of the partnership. The Partnership Agreement states that "[a]ny Transfer or purported Transfer of a

---

[1] The transfer document states that it is effective as of December 23, 2014. The Court finds that this was scrivener's error. The date of transfer was December 23, 2013.

Partnership Interest shall be null and void unless made strictly in accordance with the terms and conditions of [the Partnership Agreement]" and that "no Partner or other holder of a Partnership Interest may pledge or hypothecate its Partnership Interest to secure a debt or other obligation of any Person without the consent of the Board." Partnership Agreement, Art. XII, DE 7-2 at 51.

On December 8, 2014, Mason filed a petition for relief under Chapter 11. On April 25, 2016, the bankruptcy court converted the case to a case under Chapter 7. On October 26, 2017, Tier One Solar also filed for bankruptcy.

Landress filed a Proof of Claim with the Trustee, Richard Sparkman, in Mason's bankruptcy action, asserting a secured claim in the amount of $1,275,000 based on the note and Security Agreement. Sparkman objected to the claim on four grounds: (1) Landress was not the proper creditor; (2) Mutsy I needed Mason's consent before assigning the loan to Landress; (3) Mason could not pledge his partnership interest without unanimous consent of the other MMJ partners, which did not occur; and (4) the personal guarantee belonged to Mutsy, not Landress. DE 7-1 at 84.

The bankruptcy court granted summary judgment in favor of Sparkman on the grounds that Mason could not pledge his MMJ interest without consent. Relying on the internal affairs doctrine, the bankruptcy court applied Delaware law to the conveyance of the security interest and held that Delaware law would uphold MMJ's non-assignment provision. Consequently, the court determined that Mason did not have the power to transfer his rights in the MMJ partnership, and therefore, Landress's claim was unsecured.

Landress filed this appeal, arguing that the bankruptcy court erred in using the internal affairs doctrine. Instead, Landress argues that either New York or North Carolina law governs the Security Agreement and those states' laws would apply the Uniform Commercial Code's

anti-assignment override provisions, § 9-406 and § 9-408, which would give Landress a secured claim.

## DISCUSSION

When reviewing the grant of summary judgment by a bankruptcy court, a district court reviews legal conclusions *de novo* and findings of fact under a clearly erroneous standard. *Schlossberg v. Barney*, 380 F.3d 174, 178 (4th Cir. 2004).

Whether Landress has a valid security interest in this case is a question of state law implicating multiple states' substantive law. In determining which state's law applies, the Court must apply North Carolina's choice-of-law rules. *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205–06 (4th Cir. 1988). Under North Carolina choice-of-law principles, "the interpretation of a contract is governed by the law of the place where the contract was made." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262 (1980) (citing *Bundy v. Commercial Credit Corporation*, 200 N.C. 511, 516 (1931)). The act of signing is essential to the formation of a written contract and a contract is made in the place that it is executed. *See id.*, *and Bundy*, 200 N.C. at 514–15. North Carolina also gives effect to the parties' choice-of-law provided that the parties' choice is reasonable and not in violation of fundamental North Carolina public policy. *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 643 (2002).

The Security Agreement was executed in New York. The parties selected New York as the law governing their agreement. It is clear, then, that New York law governs the Security Agreement.

But Sparkman argues for the application of Delaware law and the internal affairs doctrine to the question of whether a valid security interest was created. Sparkman argues that 6 Del. C. §

4

15-503(f) applies to uphold the Partnership Agreement's prohibition of using partnership interests as security without MMJ's consent.

The internal affairs doctrine, recognized by North Carolina, "is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008). Delaware law, therefore, applies to the governance matters of MMJ and the relationship of MMJ and its partners.

But as applied to Mason's pledge to Landress of his economic interest in MMJ and "all dividends and distributions payable[,]" Sparkman's argument stretches the internal affairs doctrine beyond its proper scope. The internal affairs doctrine, as the name suggests, pertains to the internal governance matters of a firm. It ensures that only the place of organization regulates intra-firm relationships. Here, Mason pledged his MMJ economic interest and distributions to Landress, a third party. These interests—Mason's share of MMJ profits and distributions—are not sufficiently germane to the internal governance matters of MMJ for Delaware law to apply. Delaware law cannot supplant the application of New York law to the contract between Mason and Landress.

In an attempt to make this about MMJ's internal governance, Sparkman raises the issue of the Partnership Agreement's requirement that partners make certain capital contributions to MMJ. The argument is that if Mason uses his MMJ distributions as security for a loan, it could be detrimental to the partnership if he is then unable to fund a capital contribution. But Mason's

inability to fund his capital contributions is an issue between Mason and MMJ; it does not bear on Mason's agreement with Landress.

In sum, Delaware law, through the internal affairs doctrine, does not apply to the wholly separate agreement between Mason and Landress. Their agreement was executed in New York and selects New York law to govern its terms. Accordingly, the Court will apply New York law.

The Uniform Commercial Code, as adopted by and effective in December 2013 in New York, contains two anti-assignment override provisions for secured transactions, § 9-406 and § 9-408. Section 9-406 is a stronger override provision but applies in narrower circumstances.

Section 9-406 renders ineffective a term in an agreement between an account debtor and an assignor to the extent the term prohibits, restricts, or requires the consent of the account debtor to the creation of a security interest in a payment intangible. "Account debtor" means a person obligated on an account, chattel paper, or general intangible. § 9-102. From this definition, "general intangible" includes the "payment intangibles" referenced in § 9-406. "Payment intangible" means a general intangible under which the account debtor's principal obligation is a monetary obligation. *Id.*

It appears, then, that § 9-406 would apply to override the transfer restriction at issue in this case. Start with the relevant UCC definitions. MMJ is an account debtor because it is obligated on a general intangible, Mason's economic interest in MMJ and the associated distributions from that interest. Within the universe general intangibles, Mason's economic interest in MMJ is a payment intangible because MMJ's principal obligation to Mason for his economic interest in MMJ is to make distributions (usually monetary) in accordance with the terms of the Partnership Agreement.

Now turn to § 9-406. MMJ (the account debtor) has an agreement with Mason (the assignor), the Partnership Agreement. Importantly, Mason's agreement is with MMJ Partners, LLP, not with the individual partners themselves. *See* Partnership Agreement at 1, DE 7-2 at 18 ("This [agreement] is made by and between the Persons set forth in Exhibit A hereto and MMJ Partners, LLP . . . a Delaware limited liability partnership"). The Partnership Agreement contains a term requiring the consent of MMJ, through its Board, before partners can post their economic interests as security. *See id.* Art. XII. The consent required is that of the Board as the governing body of MMJ, not simply the consent of the partners in their individual capacities. Given that the elements of § 9-406 are met, New York's UCC overrides any transfer restrictions on Mason's economic interests in MMJ and distributions from MMJ.

For similar reasons, § 9-408 also serves to override the transfer restriction. Section 9-408 is not limited to payment intangibles but applies more broadly to general intangibles. Given that the elements of the narrower § 9-406 are met, § 9-408 also overrides the transfer restriction.

The Court now turns briefly to Sparkman's other objections to Landress's claim. Two of these are some variation of the argument that Landress is not the proper claimant because his LLC, Mutsy, made the loan. As explained above, Landress transferred the note, personal guarantee, and security agreements from Mutsy to himself on December 23, 2013. These were valid transfers. *See* Secured Convertible Promissory Note, § 13(a), *and* Personal Guarantee § 6.05. DE 7-4 at 24, 44. Sparkman also objected to Landress's claim on the grounds that § 9(e) of the Security Agreement required Mason's consent before Mutsy could assign it to Landress. This objection fails for two reasons. First, the anti-assignment language used in § 9(e) is not strong enough to void the assignment. *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell*, 863 F. Supp. 135, 137 (S.D.N.Y. 1994) (citing *Allhusen v. Caristo Const. Corp.*, 303 N.Y. 446

(1952)). Second, it is not clear why this provision should be read to require Mason's consent when Landress merely transferred the Security Agreement from his wholly owned LLC to himself.

Finally, at summary judgment, Sparkman advanced an argument that Landress actually knew of MMJ's anti-assignment provision and that Mason and Landress had an express agreement for a condition precedent wherein the Security Agreement would not be effective until after Mason received MMJ's consent. Such an agreement, to the extent it existed, is not relevant because parol evidence of a condition precedent may not be used to contradict the express terms of an integrated agreement. *Bank of Suffolk Cty. v. Kite*, 49 N.Y.2d 827, 828 (1980). The Security Agreement here is integrated and states that it is effective as of December 23, 2013.

To conclude, the Court finds that Landress's claim should be treated as a secured claim. Landress has a valid security interest in Mason's economic interest in MMJ and the distributions from MMJ.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is REVERSED. Appellee's Objection to Landress's Claim is OVERRULED and Proof of Claim 29-1 filed by Landress should be treated as a secured claim. Appellee's motion to expand page limit [DE 22] is GRANTED.

SO ORDERED, this __4__ day of February, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE